# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICOPERI, S.r.l., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| -against- | ) |
| | ) |
| CHM MARITIME, S.A.P.I. de C.V., | ) PRELIMINARY EQUITABLE |
| | ) RELIEF REQUESTED |
| Respondent. | ) |
| | ) |

## PETITION TO COMPEL ARBITRATION

Petitioner MICOPERI, S.r.l., as and for its Petition against Respondent CHM

MARITIME, S.A.P.I. de C.V., alleges as follows:

1.      This Petition concerns an arbitration agreement that broadly covers "[a]ny
dispute, claim or controversy arising out of or related to" four underlying contracts ("charter-
parties") for the use of ocean vessels.  Respondent has commenced arbitration to recover
payments that it claims are due under these contracts, but it refuses to arbitrate claims that
concern the malicious actions it took to obtain these same payments.  Petitioner now faces the
imminent threat of an arbitral award that reflects only one half of the parties' dispute.

## PARTIES

2.      Petitioner Micoperi, S.r.l. ("Micoperi") is a Società a responsabilità limitata
organized under the laws of Italy with its principal office at Via Trieste, 279 in Ravenna, Italy.

3.      Respondent CHM Maritime, S.A.P.I. de C.V. ("CHM") is, on information and
belief, a corporation organized under the laws of Mexico with its principal office at Avenida
Concordia No. 35, Altos 58 y 60 in Ciudad Del Carmen, Campeche, Mexico.  CHM transacts
business from an office located at 41 Brooks Road, Suite 1005 in Braintree, Massachusetts.

**JURISDICTION AND VENUE**

4.      The Court has subject matter jurisdiction pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1331 because the arbitration agreement at issue here arises from a commercial legal relationship that is not entirely between citizens of the United States, and in any event, it involves property located abroad and envisages performance abroad.

5.      Additionally and alternatively, the Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333 because the arbitration agreement is part of a contract for maritime services.  The Court would also have supplemental jurisdiction under 28 U.S.C. § 1367.

6.      The Court has personal jurisdiction over Respondent CHM because, *inter alia*, CHM maintains an actual and continuous presence in Massachusetts; the charter-parties identify "Braintree, MA" as the place of contracting; CHM performed pertinent acts and omissions within Massachusetts; and, the charter-parties designate "Boston" as the place of arbitration.

7.      Venue is proper pursuant to 28 U.S.C. § 1391.

8.      The Eastern Division is appropriate pursuant to LR 40.1(D)(1)(c) because the only party residing in the District is located within the Eastern Division.

**AGREEMENT TO ARBITRATE**

9.      Petitioner Micoperi is an offshore and marine contractor that began construction of an offshore pipeline project for Pemex (the state oil company of Mexico) in 2013.  The pipeline connects two offshore platforms with shoreside facilities about 24 miles away.

10.     To facilitate its work on the project, Micoperi chartered three tugs and a barge from Respondent CHM during the year 2013.  Each of the charter-parties designates "Boston" as the "Place of Arbitration" and contains the following arbitration provision at paragraph 34(e):

> *Any dispute, claim or controversy arising out of or related to this charter party*, or the breach, interpretation or validity thereof, shall be settled through good faith negotiation.  If the dispute cannot be settled through negotiation, the parties agree

to attempt in good faith to settle the dispute by mediation administered of the Maritime Arbitration Association of the United States in accordance with its Rules.  If the parties are unsuccessful in settling the dispute through mediation, the parties agree to binding arbitration administered by a single arbitrator of the Maritime Arbitration Association of the United States in accordance with its Rules, and final judgment on the award rendered by the arbitral tribunal may be entered in any court having jurisdiction thereof.  The parties understand they are waiving any right to a jury trial.  The parties further agree to accept service of process for the arbitration (or any action to enforce an arbitration award) by delivery of said process via an internationally recognized overnight courier service.  [emphasis added]

### THE DISPUTE

11.     It took longer complete the project than anticipated, and as a result, Micoperi did not realize payments it had expected to receive.  At the beginning of 2014 Micoperi was attempting to negotiate a workout with CHM, which claimed that additional payments were due under the charter-parties, while also trying to complete work on the project.

12.     As explained herein, during the course of these workout discussions the representatives and agents of CHM and its affiliate Cashman Equipment Corp. then undertook a series of actions that sought to injure and damage Micoperi's ongoing operations.  The only apparent motive for these actions was to coerce more favorable repayment terms.

13.     Cashman Equipment Corp. ("Cashman") is, on information and belief, a corporation organized under the laws of Massachusetts with its principal office at 41 Brooks Road, Suite 1005 in Braintree, Massachusetts.  As is pertinent here, Cashman and CHM both used the same office in Braintree, Massachusetts and in Ciudad del Carmen, Mexico, and the same individuals acted on behalf of both companies.

### CHM Files a Protest in Mexico

14.     At the time of these discussions, Micoperi was chartering a barge (the "Barge") from an unrelated company.  Micoperi needed this Barge to carry a large piece of specialized equipment called the "stinger," and it also used the Barge to transport materials and supplies

from the shore to the platforms.  The Barge was essential to Micoperi's ongoing operations because Micoperi had no other vessel that could carry the stinger when it was not in use.

15.     Mexican laws required that the Barge have a navigation permit from the Mexican Merchant Marine.  The Barge's current permit was due to expire on April 13, 2014, and Micoperi had applied to renew it on April 1, 2014.

16.     Unbeknownst to Micoperi, a representative of CHM (Ms. Ana Chavez) submitted a formal objection to renewal of the Barge's navigation permit on April 4, 2014.  This objection asserted that CHM had another barge that was registered in Mexico that could perform work. The objection was submitted on letterhead that identified both CHM and Cashman.  Exhibit 1.

17.     Also at this same time, Cashman was making arrangements to purchase the Barge from its prior owner.  Cashman purchased the Barge on April 5, 2014, one day after Ms.  Chavez had submitted the objection to the Mexican Merchant Marine.

18.     On April 9, 2014, Ms. Chavez sent an email to Micoperi notifying it of the purchase, and offering to make a new charter-party.  Her email identified both CHM and Cashman in its signature block.  Exhibit 2.  Thus, Ms. Chavez was attempting to charter the Barge to Micoperi, ostensibly on behalf of Cashman, while she simultaneously worked to preclude Micoperi from making use of the Barge, ostensibly on behalf of CHM.

**The Micoperi-CHM-Cashman Agreement**

19.     A third party (not CHM or Cashman) notified Micoperi that the representatives of CHM and Cashman were attempting to preclude renewal of the Barge's navigation permit. Micoperi then raised this issue with the representatives of CHM and Cashman.

20.     As a result, representatives of the three companies held discussions on April 9, 2014 in which they agreed that:  (1) Micoperi would make a new charter for the Barge with

Cashman as the counter-party; (2) Micoperi would immediately pre-pay $200,000 towards hire

of the Barge; (3) Micoperi would pay the balance owed to CHM by April 23, 2014; and (4)

CHM would withdraw the protest it had filed.  The parties exchanged an email summarizing the

agreement on that same date.  Exhibit 3.  Micoperi immediately paid the $200,000.

**CHM does Not Withdraw its Objection & Continues Interfering with the Project**

21.     Contrary to its agreement, CHM did not withdraw the protest when Micoperi

made the $200,000 payment to Cashman.  The Mexican Merchant Marine notified Micoperi that

it was denying renewal of the navigation permit on April 10, 2014.  Believing that CHM was

performing its end of the bargain, Micoperi continued attempting to renew the permit after it

expired on April 13, 2014 and did not attempt to locate or outfit a suitable substitute vessel.

22.     Rather than providing any assistance with the navigation permits, the

representatives of Cashman and CHM actually sought to exacerbate the situation.  For example,

on April 30, 2014 they dispatched the CHM-owned tug *Marina Orion* to Micoperi's offshore

work location in a surprise attempt to retake possession of the Barge – even though it was only

21 days into the prepaid charter.  The representatives of Cashman and CHM also contacted

Mexican authorities and attempted to induce them to take action against Micoperi in light of the

Barge's lack of navigation permits.

23.     These actions placed Micoperi in an extraordinarily difficult position:  it needed

to complete work on the project in order to realize its remaining payments, but it could only

make limited use of the Tug, which was causing significant additional delay and cost.  As April

progressed, Micoperi notified CHM that the additional delays and costs would prevent it from

paying the balance to CHM later that month.

24.     Micoperi paid CHM the sum of $500,000 on May 7, 2014.  Micoperi made a second payment of $300,000 to CHM on July 2, 2014.  However, the representatives of CHM and Cashman asserted that the Barge had been damaged and, contrary to Micoperi's stated intention, they credited this second payment to Cashman.

## CHM Demands Arbitration and Cashman Sues

25.     CHM demanded arbitration of its claim for hire and interest under the 2013 charter-parties on July 15, 2014.  Exhibit 4.

26.     The charter-party for the Barge does not contain a forum or arbitration clause aside from containing a statement identifying this Court in the box labeled "Dispute Resolution."

27.     On September 14, 2014 Cashman filed suit in this Court seeking additional amounts that it claims are due for the Barge (even after the $300,000 payment that was mis-allocated from CHM).  Cashman Equipment Corp. v. Micoperi, S.r.l., no. 1:14-cv-13641-RGS.

### REFUSAL TO ARBITRATE

28.     Micoperi submitted a response to CHM's claim on August 4, 2014 and (after retaining U.S. counsel) submitted an amended response on October 29, 2014.  Micoperi contends that the actions of CHM and Cashman act as an estoppel and setoff against CHM's claim for hire and interest.  Exhibit 5.

29.     CHM thereafter moved to strike the amended response, asserting that the arbitration clause covered only its claim for hire and interest, but not any of the actions it thereafter took to recover that hire and interest.

30.     On January 15, 2015 the arbitrator ruled that while the question was "close," "the tort claims set forth in Micoperi's Amended Response did not arise out of and are not related to The Charters," and it ordered the amended response stricken.

31.    On January 26, 2015 CHM moved the arbitrator for summary judgment on its claim for hire and interest.

## PETITION TO COMPEL ARBITRATION

32.    Respondent has failed, neglected, and/or refused to arbitrate Micoperi's defenses and claims that arise out of and/or relate to the charter-parties.

33.    Respondent's failure, neglect, and/or refusal has aggrieved and continues to aggrieve Petitioner because Petitioner is losing the benefit of the arbitration clause and further because Respondent is now seeking an award that will reflect only part of the controversy that arises out of and relates to the charter-parties.

34.    Petitioner's injury is irreparable because, *inter alia*:  Petitioner is entitled to enjoy the benefit of the arbitration agreement in fact; Petitioner is being compelled to participate in an arbitration that does not cover the entire dispute; and, barring the Court's intervention at this time, Petitioner likely will not be able to obtain relief in the future.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for the following relief:

    i.    an order compelling Respondent to submit the entire dispute to arbitration;

    ii.    injunctive relief directing Respondent and its officers, agents, servants, employees, and all persons in concert or participation with them, as well as all other persons who receive notice, to submit the entire dispute to arbitration;

    iii.    a temporary restraining order and/or injunction pendent lite staying the arbitration during the pendency of this action; and

    iv.    such other and further relief, including further equitable relief, as may be necessary to effectuate the Court's judgment, to protect the Court's jurisdiction, or to otherwise grant relief, or as the Court otherwise deems just and equitable.

Dated: February 9, 2015

Respectfully submitted,

THE PLAINTIFFS,

By their attorneys,


/s/ Patrick M. Groulx
Patrick M. Groulx, Esq.
BBO No. 673394
Grolman, LLP
321 Columbus Avenue
Boston, Massachusetts 02116
Tel:  617.859.8966
Fax:  617.859.8903
patrick@grollmanllp.com

David D. Jensen, Esq.
DAVID JENSEN PLLC
111 John Street, Suite 420
New York, New York 10038
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com
Motion for Admission *Pro Hac Vice* Forthcoming