UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICOPERI, S.r.l., | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 15-cv-10296-ADB |
| | * | |
| CHM MARITIME, | * | |
| S.A.P.I de C.V., | * | |
| | * | |
| Respondent. | * | |

## **MEMORANDUM AND ORDER**

March 5, 2015

BURROUGHS, D.J.

## I.   INTRODUCTION

This case involves an ongoing arbitration that is proceeding before the Maritime Arbitration Association of the United States ("MAA"). On July 15, 2014, CHM Maritime, S.A.P.I. de C.V. ("CHM") filed a demand for arbitration against Micoperi, S.r.l. ("Micoperi") to recover payments that Micoperi allegedly owes CHM under four charter party contracts (the "Charter Parties") (Docket No. 1, ¶¶ 10, 25). Each of the Charter Parties relates to a different vessel that Micoperi chartered from CHM during the year 2013 (Id. ¶ 10).

Micoperi submitted a Response to CHM's demand for arbitration (Id. ¶ 28). On October 29, 2014, Micoperi submitted an Amended Response, alleging that CHM and a related company had committed a variety of tortious acts against Micoperi, which interfered with Micoperi's business operations and caused Micoperi to incur substantial damages (Id. ¶¶ 28, 29, Exhibit 5). In its Amended Response, Micoperi contended that these allegedly tortious acts should "act as an estoppel and setoff" to CHM's claims for damages, and sought to have its allegedly related counterclaims and defenses included in the MAA arbitration (Id.).

1

The arbitrator issued an Interim Order on January 15, 2015, in which he concluded that Micoperi's claims against CHM did not "arise out of or relate to" the four Charter Parties between Micoperi and CHM at issue in the arbitration (Docket No. 10, Exhibit 7, at p. 2). Rather, the arbitrator found that Micoperi's claims related to a fifth charter party that Micoperi had entered into with another company (Id.). This fifth contract, unlike the four Charter Parties with CHM, did not contain an arbitration clause (Id.; see also Docket No. 1, ¶ 26). Based on this, the arbitrator held that Micoperi's counter-claims did not belong in the MAA arbitration, and that Micoperi's Amended Response should be stricken (Docket No. 10, Exhibit 7, at p. 2).

On February 10, 2015, Micoperi filed this action against CHM in the district court, which it styled as a "Petition to Compel Arbitration" (Docket No. 1). Ultimately, Micoperi asked this court to rule that its claims against CHM were, in fact, arbitrable, and to order that those claims be submitted to and considered by the arbitrator (Id.). More immediately, Micoperi moved for a temporary restraining order and preliminary injunction staying the MAA arbitration between the parties until this court ruled on the issue of arbitrability (Docket Nos. 8, 9). Micoperi argued that its claims against CHM "[arose] out of or [related] to" the four Charter Parties, and that they should, therefore, also be adjudicated in the MAA arbitration. Micoperi also argued that it faced irreparable harm in the "imminent threat of an arbitral award" that reflects only "one half of the parties' dispute" (Docket No. 1, ¶ 1). CHM filed an Opposition to Micoperi's Motion for a Temporary Restraining Order on February 17, 2015 (Docket No. 12). Both parties appeared before the Court on February 18, 2015, for a hearing on Micoperi's Motion for injunctive relief (Docket No. 11, 14).

After reviewing and carefully considering the parties' written submissions and oral arguments, and for the reasons set forth on the record at the hearing and below, Micoperi's

Motion for a Temporary Restraining Order and a Preliminary Injunction staying the MAA arbitration is <u>DENIED</u>.  It is further ordered that Micoperi's Petition to Compel Arbitration should be <u>DISMISSED</u>, as discussed at the hearing, and for the reasons set forth below in Part III(A).

**II.    LEGAL STANDARD**

In considering a motion for a preliminary injunction, a district court must consider: "'(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest.'"  <u>Gonzalez-Droz v. Gonzalez-Colon</u>, 573 F.3d 75, 79 (1st Cir. 2009) (quoting <u>Boston Duck Tours, LP v. Super Duck Tours, LLC</u>, 531 F.3d 1, 11 (1st Cir. 2008)).[1]

The movant's likelihood of success on the merits and a showing of irreparable harm are the two most important factors in this analysis.  <u>Gonzalez-Droz</u>, 573 F.3d at 79.  In addition, the First Circuit often measures irreparable harm "on 'a sliding scale, working in conjunction with a moving party's likelihood of success on the merits,' such that '[t]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.'"  <u>Braintree Labs., Inc. v. Citigroup Global Markets Inc.</u>, 622 F.3d 36, 42-43 (1st Cir. 2010).  It is the movant's burden to demonstrate probability of success on the merits.  <u>See</u> <u>Lancor v. Lebanon Housing Auth.</u>, 760 F.2d 361, 363 (1st Cir. 1985).  Similarly, the burden of showing that a denial of preliminary relief is likely to cause irreparable harm "rests squarely upon the movant."  <u>Gonzalez-Droz</u>, 573 F.3d at 79 (internal quotations and citation omitted).

---

[1] The same four-factor test is applied to motions for temporary restraining orders, provided that the opposing party has been provided with notice of the motion.  <u>See</u> <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop</u>, 839 F. Supp. 68, 70 (D. Me. 1993); Fed. R. Civ. P. 65(b).

3

## III. DISCUSSION

### A. Likelihood of Success on the Merits

Micoperi has not met its burden of showing that it is likely to succeed on the merits of its Petition to Compel Arbitration. Indeed, the facts establish just the opposite—that Micoperi will not succeed on the merits. The ultimate relief sought by Micoperi is an order from this court compelling the parties' "entire dispute" to be arbitrated in the ongoing MAA arbitration, premised upon a finding by the court that Micoperi's counter-claims against CHM are arbitrable (Docket No. 1, p. 7). Micoperi is unlikely to prevail on the issue of arbitrability, and further, the issue is not properly before the court because (1) the parties contractually agreed to submit all disputes, including those concerning the arbitrator's jurisdiction, to the arbitrator; and (2) the arbitrator has already considered and ruled upon this issue in his January 15, 2015 Interim Order (Docket No. 10, Exhibit 7).

"[W]hether an issue is subject to arbitration under an agreement containing an arbitration clause is itself presumptively a matter for the court to decide before ordering arbitration." Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 10 (1st Cir. 2009) (citing First Options v. Kaplan, 514 U.S. 938, 943-44 (1995)). "However, this general rule can be qualified by agreement of the parties," and thus, "where the parties have themselves 'clearly and unmistakably agreed' that the arbitrator should decide whether an issue is arbitrable, the Supreme Court has held that this issue is to be decided by the arbitrator." Id. (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)).

Here, the record shows that CHM and Micoperi clearly and unmistakably agreed to submit arbitrability issues to the MAA arbitrator. First, each of the four Charter Parties between CHM and Micoperi contains an identical arbitration clause, providing that: "[a]ny dispute, claim or controversy arising out of or relating to this charter party, or breach, interpretation or validity

4

thereof, shall be settled through good faith negotiation," and, if unsuccessful, by arbitration before "a single arbitrator of the Maritime Arbitration Association of the United States <u>in accordance with its Rules</u> . . . ." (emphasis added) (Docket No. 1, ¶ 10; <u>see also</u> Docket No. 10, Exhibits 1-4, ¶ 34(e)).  This reference to the MAA Rules is critical, because it manifests the parties' agreement to be bound by those Rules.  See <u>Apollo Computer, Inc. v. Berg</u>, 886 F.2d 469, 473 (1st Cir. 1989) (finding that parties' agreement to arbitrate "in accordance with the rules of arbitration of the International Chamber of Commerce" was an agreement to be bound by the ICC Rules of Arbitration).

In turn, Rule 9 of the Arbitration Rules of the MAA, entitled "*General powers of the arbitral tribunal*" provides in relevant part that:

> Unless the parties otherwise agree, the arbitral tribunal shall have the power to decide all issues arising out of or related to any claim or response, or agreement to arbitrate an existing dispute.  <u>This includes not only the merits of the dispute but any issues with respect to the jurisdiction of the arbitral tribunal</u> and the existence, scope or validity of the underlying arbitration agreement.

Arbitration Rules of the MAA, Rule 9(a) (emphasis added) (Docket No. 12, Exhibit C).

MAA Rule 9(a) unequivocally delegates to the arbitrator the power to decide the proper scope of the arbitration, and to rule upon what claims may or may not be arbitrable in that proceeding.  See <u>Apollo Computer, Inc.</u>, 886 F.2d at 473; <u>Awuah</u>, 554 F.3d at 11-12 (noting that arbitration rule providing that arbitrator may determine his or her own jurisdiction, including any objection to the existence, scope, or validity of the arbitration agreement, was "about as 'clear and unmistakable' as language can get.").  By agreeing to be bound by MAA Rule 9(a), Micoperi has already consented to the arbitrator deciding issues of arbitrability, including all the issues Micoperi raised in its Petition to Compel Arbitration.  Thus, the parties have effectively removed the issue of arbitrability from the jurisdiction of this court, and placed it squarely in the

5

hands of the arbitrator. Indeed, the parties already briefed this issue before the arbitrator, and the arbitrator issued an Interim Order on January 15, 2015, finding that Micoperi's claims against CHM were not within his jurisdiction in the arbitration.

Even assuming, *arguendo*, that the allegedly tortious conduct that gave rise to Micoperi's counter-claims and defenses "[arose] out of or [was related] to" the Charter Parties, the MAA Rules governing the arbitration give the arbitrator full authority to determine his own jurisdiction and the scope of the underlying arbitration agreement. Micoperi's suggestion that it should not be bound by Rule 9 of the MAA is unavailing. Because the issue of arbitrability is not properly before this court, Micoperi cannot prevail on its Petition to Compel Arbitration.

### B. Irreparable Harm

Micoperi has also failed to demonstrate that it will suffer any irreparable harm in the absence of an injunction staying the MAA arbitration. Micoperi claims to face the imminent threat of an arbitration award that wrongfully excludes Micoperi's claims against CHM, and that "does not consider the full scope of the parties' dispute" (Docket No. 9, p. 14). According to Micoperi, this harm would be irreparable, because the narrow grounds for appealing arbitration awards make it virtually impossible to obtain meaningful relief.

In support of this argument, Micoperi cites a number of cases finding irreparable harm where a party is being compelled to arbitrate a claim that falls outside the scope of its arbitration agreement. See, e.g., AT&T Mobility LLC v. Princi, No. 11-11448, 2011 WL 6012945, *1 (D. Mass. Dec. 2, 2011); McLaughlin Gormley King Co. v. Terminix Intern. Co., 105 F.3d 1192 (8th Cir. 1997). Micoperi's position, however, is not analogous to such cases. Micoperi does not dispute that it agreed to arbitrate the contract claims currently before the MAA arbitrator (Docket No. 1, ¶ 28). It merely believes that additional counter-claims and defenses should also be

6

adjudicated with them.  This position does not present a strong case for irreparable harm, as Micoperi would not be precluded from asserting those claims against CHM in a separate action for money damages or in a later arbitration.  In contrast, most of the cases cited by Micoperi involve litigants faced with the prospect of a binding arbitral award adjudicating claims that the litigants did not agree to arbitrate in the first place, with preclusive effect.  No such threat exists here.

Further, Micoperi has made no showing that it will suffer harm "not accurately measureable or adequately compensable by money damages."  Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 13 (1st Cir. 2000).  During the hearing, counsel for Micoperi emphasized that Micoperi's counterclaims against CHM should be adjudicated in the ongoing arbitration because any amount it recovered against CHM would offset any damages awarded to CHM under the Charter Parties.  On this record, Micoperi's claims against CHM are fully compensable by money damages.  In sum, Micoperi has not met its burden of showing that it will suffer any irreparable harm in the absence of an injunction staying the MAA arbitration.

### C.  The Balance of Hardships on the Parties

This factor balances "the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue." Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 671 F.3d 12, 19 (1st Cir. 2011).  Micoperi argues that if an injunction does not issue, it will lose its ability "to present its claims and defenses alongside [CHM's] own claim for payment," whereas CHM faces only "a delay of the arbitral proceedings" (Docket No. 9, p. 13).  Although this factor slightly favors Micoperi, it is not enough to overcome Micoperi's failure to establish a likelihood of success on the merits or to demonstrate irreparable harm.

### D. The Public Interest

The final factor considers whether "the public interest would be better served by issuing then by denying the injunction." Massachusetts Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness of Com. of Mass., 649 F.2d 71 (1st Cir. 1981). Micoperi may be correct that it would be more efficient to adjudicate all claims between the parties in one proceeding, and that the public interest may favor injunctive relief which effectuates the parties' intent to arbitrate disputes. However, the public interest is also well-served by allowing arbitrations to proceed expeditiously, without interference from the courts. The public interest factor is largely neutral in this case, and it does not outweigh Micoperi's failure to establish a likelihood of success on the merits or irreparable harm. In this case in particular, the public interest cannot justify premature judicial review of an arbitrator's interim decision on arbitrability, where the parties clearly agreed to submit their disputes, including the question of arbitrability, to the arbitrator.

### IV. CONCLUSION

For the foregoing reasons, Micoperi's Motion for a Temporary Restraining Order and a Preliminary Injunction staying the arbitration is DENIED.

Further, because this decision is determinative of the underlying action and with the agreement of the parties, the court hereby orders that this case is DISMISSED.

**SO ORDERED.**

Dated: March 5, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE

8